J-A30013-18

2019 PA Super 28

| | | |
|---|---|---|
| IN THE INTEREST OF: M.V. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.M., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1035 WDA 2018 |

Appeal from the Order Entered June 7, 2018
In the Court of Common Pleas of Crawford County Orphans' Court at
No(s):  O.C. 2017-35

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

OPINION BY SHOGAN, J.:                    **FILED FEBRUARY 6, 2019**

Appellant, R.M. ("Father"), appeals from the June 7, 2018 order that involuntarily terminated his parental rights to his daughter ("Child"), who was born in September of 2013.  After careful review, we affirm.

The orphans' court summarized the relevant facts and procedural history of this matter as follows:

> The dependency action [underlying the termination of parental rights in this matter] was commenced on January 15, 2016, when [Child], then two years of age, was residing with a kinship provider. [Child] had previously lived with her mother, [N.V. (hereinafter "Mother")].
>
> Notice of the hearing on the dependency petition, scheduled for January 28, 2016, was sent by [Crawford County Children and Youth Services ("CYS" or "the Agency")] to Father at his post office address by first class U.S. Mail as well as by certified mail, return receipt requested.[2] The first class mailing was not returned, and Father signed the return receipt on February 10, 2016. He did not attend the hearing set for January 28, 2016, which was reset for February 18, 2016, at the request of the father of [Child's] half-brother. The Clerk of Court's distribution stamp on the Order

_____
\*   Retired Senior Judge assigned to the Superior Court.

continuing the hearing indicates that it also was sent to Father by first class and certified mail.[3] *See* DP Order, 2/9/16. The first class mailing was not returned,[4] and the receipt for the certified mailing indicates delivery on February 23, 2016. The hearing officer's recommendation for dependency adjudication was adopted, and a copy of this Court's Order was sent to Father by regular mail. *See* DP Order, 3/1/16.

> [2] CYS's Affidavit of Service is included in Petitioner's Exhibit 1 admitted into evidence at the termination hearing. Accompanying copies of the dependency petition and court Order were a summons to appear and CYS correspondence.

> [3] Father states in Paragraph 3 of his "Petition to Dismiss the Invol[u]ntary Termination of Parental Rights Petition Against Natural Father [R.M.]," that the record in the dependency proceedings "contains an Affidavit of Service but no Certificate of Service pursuant to Pa.[R.]J.C.P. 1345[(B)(d) and (C)]. Proof of Service[]," concerning the continued hearing. This is incorrect, as there is no such affidavit, and there is a Certificate of Service of the Order filed by the Clerk of Courts dated February 8, 2016.

> [4] The mailing is not in the packet of returned mailings to Father maintained by the Clerk of Courts.

Father had been convicted following a jury trial on November 17, 2015, of *inter alia* DUI-refusal, and Driving While Operating Privileges Suspended-DUI Related, and was sentenced on March 4, 2016, to undergo imprisonment in the Crawford County Correctional Facility for ninety days, and a minimum of eighteen months in a state correctional facility thereafter. Case No. CR 760-2015 (Vardaro, P.J.). He was paroled on October 4, 2017.[5]

> [5] Although his RRR[I] minimum was 13½ months, he was also serving a consecutive Gagnon II sentence of eight months, with RRRI eligibility at 6 months, at Case No. 20-316-2010.

Meanwhile, the goal of the dependency proceedings was changed to adoption following a hearing held on or about May 31,

2017, with Father's whereabouts reported as unknown.[6] DP Order, 6/8/17. Copies of notices and orders from this and prior review hearings sent to Father were returned unclaimed, but a notice of continuation sent on April 26, 2017, bore the return notation, "UTF i.e., unable to forward, (incarcerated)." CYS thereafter attempted to locate Father, but was unsuccessful because [his name was listed incorrectly] in the Department of Corrections' custodial records.

> [6] [Child] has been in the foster care of [the pre-adoptive parents], since September of 2016.

On August 25, 2017, CYS filed a petition to involuntarily terminate Father's parental rights pursuant to sections 2511(a)(1), (2), (5), and (8) of the Adoption Act.[] A hearing on the petition scheduled for October 6, 2017, was postponed on motion of the guardian *ad litem* until December 11, 2017. CYS's request for the appointment of counsel for Father, with whom CYS had been in contact on October 20, 2017, was denied by the undersigned without prejudice to Father filing an application in conformity with Section 2313(a)(1) of the Adoption Act (which he never did). Order, 11/6/17. CYS then filed the instant amended petition, on November 22, 2017,[8] along with a proposed order which included the appointment of counsel for Father. Judge Stevens signed the Order on November 28, 201[7], as noted above. The hearing was again rescheduled for January 18, 2018, to allow Father time to conduct discovery. Mother moved for a continuance, and the hearing was again rescheduled for May 31, 2018. Order, 1/17/18 (Vardaro, P.J.).

> [8] The averment of Paragraph 3 of the original petition that "the last known mailing address of the father is unknown" was deleted in the amendment. Also deleted therefrom, apparently inadvertently, were the averments that Father is "an adult individual, whose parental rights in and to [Child] have not been terminated." CYS served Father personally with the amended petition on November 28, 2017. Aff'd. of Service, 4/16/18.

Father and his counsel had attended the ninety-day permanency review hearing begun on November 28, 2017, and completed on December 19, 2017. The hearing officer's recommendation and report, denying Father visitation rights, was

adopted by President Judge Anthony J. Vardaro. DP Order, 1/2/18. Father's objections, filed on January 5, 2018, and objected to by CYS as untimely, have not been heard by Judge Vardaro.[9] Father did not object, however, to the denial of his visitation rights by the Order adopting the hearing officer's recommendation following the subsequent ninety-day review hearing held on April 11, 2018.[10] DP Order, 4/17/18 (Vardaro, P.J.). Father did file in the dependency action a "Petition to Strike Adjudication Order, March 1, 2016 as to Natural Father [R.M.]," and a corresponding petition in the instant action, both on May 9, 2018. The latter was denied and the termination hearing, commenced on May 31, 2018, was concluded on June 5, 2018. This Court's findings of fact and reasons for terminating Father's parental rights were stated on the record at the conclusion of the hearing. *See* Transcript of Proceedings Taken at Time of the Involuntary Termination Hearing (hereinafter, "Tr."), 6/5/2018, at 27-41. …

> [9] A hearing on the objections was scheduled for March 2, 2018, but rescheduled to March 7, 2018, on CYS's motion. On Father's motions, the hearing was rescheduled again for April 5, 2018, and for April 12, 2018. Upon hearing, the matter was referred to the undersigned. DP Orders, 4/12/18 & 5/2/18 (Stevens, J.). Father was advised that he must seek rehearing before Judge Vardaro in conformity with the coordinate jurisdiction doctrine. DP Order, 5/18/18. Father's motion for re-hearing, filed on May 31, 2018, has not been addressed.

> [10] That hearing was rescheduled from March 29, 2018, at the guardian *ad litem's* request.

Orphans' Court Opinion, 7/23/18, at 2-5 (footnote 7 omitted).

The orphans' court terminated Father's parental rights on June 7, 2018,[1]

and Father filed a counseled notice of appeal and statement of errors

_____

[1] The June 7, 2018 order also terminated Mother's parental rights. Mother is not a party to this appeal.

complained of on appeal on July 6, 2018.[2] The orphans' court filed its Pa.R.A.P. 1925(a) opinion on July 23, 2018.

Prior to addressing Father's issues, we address *sua sponte* whether the requirements of 23 Pa.C.S. § 2313(a), which addresses a child's right to counsel, have been satisfied in this case.[3] Children have a statutory right to counsel in contested involuntary termination proceedings, as follows:

> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

In the case of **In re T.S.**, 192 A.3d 1080 (Pa. 2018),[4] our Supreme Court noted that although the failure to appoint counsel in a contested termination of parental rights case implicates a structural error in the

---

[2] The orphans' court granted Father's petition for *In Forma Pauperis* ("IFP") status on July 18, 2018.

[3] The right to counsel belongs to the child, and "[t]his Court must raise the failure to appoint statutorily-required counsel for children *sua sponte*, as children are unable to raise the issue on their own behalf due to their minority." **In re Adoption of T.M.L.M.**, 184 A.3d 585, 588 (Pa. Super. 2018) (citation omitted).

[4] Petition for *Certiorari* Docketed *sub nom.* **T.H.-H. v. Allegheny County Office of Children, Youth and Families, et al.**, December 11, 2018 (No. 18-6997).

proceedings, a structural error does not automatically render an issue non-waiveable. ***Id.*** at 1087. "Structural error means only that no harmless-error analysis is relevant." ***Id.*** However, the Supreme Court concluded that the statutory right to counsel belongs to the child alone and found the issue could not be waived. ***Id.***

The ***T.S.*** Court also discussed whether a Guardian *Ad Litem* ("GAL") who is an attorney may represent a child's best interests and legal interests in a termination proceeding, or whether the failure to appoint separate counsel to represent a child's legal interests constitutes error.[5] The Court also analyzed the case of ***In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017), and noted that a majority of the Court in ***L.B.M.*** agreed that:

> (a) in the context of contested termination-of-parental-rights ("TPR") proceedings, the first sentence of Section 2313(a) requires that the common pleas court appoint an attorney to represent the child's legal interests, *i.e.*, the child's preferred outcome; (b) where there is a conflict between the child's legal interests and his best interests, an attorney-guardian *ad litem* (an "attorney-GAL"), who advocates for the child's best interests, cannot simultaneously represent the child's legal interests; and (c) in such a circumstance, the failure to appoint a separate

---

[5] A child's "legal interests" and "best interests" are defined as follows:

> "Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

Pa.R.J.C.P. 1154, comment.

attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to a harmless-error analysis.

***T.S.***, 192 A.3d at 1082. The ***T.S.*** Court concluded: "[D]uring contested termination-of-parental-rights proceedings where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests." ***T.S.***, 192 A.3d at 1092. Additionally, the Court found that in instances where the child's preferred outcome is not ascertainable, such as where the child is very young or is unable to express a preference, there can be no conflict between the child's legal and best interests. ***Id.***

In the case at bar, the orphans' court appointed Attorney Tye Cressman as Child's legal counsel and GAL for the termination proceedings, and Attorney Cressman represented both Child's legal interests and best interests. Order, 9/7/17, at ¶4. This order conforms with the recommendation of our Supreme Court in ***T.S.***, 192 A.3d at 1090 n.19 ("It would be a better practice for the court to place an order on the record formalizing the GAL's role for termination purposes."). However, we note that Attorney Cressman's role was initially unclear to this Court since the docket, Appellee's brief's certificate of service, and the notes of testimony from the termination hearing list Attorney Cressman solely as "GAL," and Attorney Cressman did not file a brief with this Court.

- 7 -

At the June 1, 2018 hearing, the orphans' court asked Attorney Cressman about his dual role and inquired whether there was any conflict. N.T., 6/1/18, at 102-104. This inquiry was consistent with our recent *en banc* decision in **In re: K.R**., ___ A.3d ___, 2018 PA Super. 334, at *14 (Pa. Super. filed December 10, 2018) ("When a child has a preferred outcome that is ascertainable, counsel representing a child's legal interests, after appropriate consultation with the child, should place on the record the child's preferred outcome."). Attorney Cressman stated on the record that he spoke to Child about her wishes, to the extent it was possible due to Child's age, and it was Attorney Cressman's conclusion that there was no conflict between Child's best interests and her legal interests. N.T., 6/1/18, at 102-104. Furthermore, neither Father nor CYS nor the orphans' court raised any indication of a conflict. Therefore, we conclude that Attorney Cressman dutifully represented Child in both respects, and we discern no conflict between Child's legal interests and best interests that would require the appointment of separate counsel. **T.S.**, 192 A.3d at 1092. In doing so, we reiterate our Supreme Court's recommendation that the orphans' court should formalize counsel's role by placing an order on the record, which was done in this case. However, we add that the record as a whole should clearly reflect counsel's role, as well as his or her conclusion as to whether or not a conflict exists between a child's best interests and legal interests. Such practices allow the orphans' court in the first instance, and the appellate courts subsequently, to discern whether

a child's rights were properly protected without scouring the record inefficiently or remanding the case and prolonging a decision.

On appeal, Father raises the following issues for our consideration:

I. Whether termination of parental rights is improper under 23 Pa.C.S § 2511 when the natural parent has had no actual knowledge of his child's dependency and placement.

II. Whether the Trial Court must proceed with an Involuntary Termination of Parental Rights proceeding filed by the Agency if notice pursuant to 237 Pa Code 1331 was not obtained in the dependency action, which gave rise to facts presented by the Agency and relied on by the Trial Court in the Orphans Court proceeding.

III. Whether the Trial Court erred by accepting the Agency's failed attempts at service of the Adjudication Petition and subsequent Order to the biological parent to establish constructive notice of the Agency's involvement with the child thereby eliminating the parent's due process rights and the Agency's burden to provide reasonable efforts to reunify the family?

IV. Whether the Trial Court did not properly consider CYS's failure to use reasonable efforts by not obtaining and utilizing all of natural father's readily available contact information from natural mother and other sources, i.e. phone number, place of employment, location of residence.

Father's Brief at 2-3.[6]

In his brief, although he mentions Section 2511, Father focuses almost exclusively on his allegation that he was not provided notice of the **dependency** proceedings.[7] After review, we conclude that while Father

---

[6] For purposes of our disposition, we have renumbered Father's issues.

[7] Father does not challenge notice in the instant termination case.

purports to present four issues on appeal, he has, in fact, presented only two: 1) a largely tangential averment concerning 23 Pa.C.S. § 2511(a)(1); and 2) his claim that he was not afforded proper notice of the dependency action that preceded the instant termination petition proceedings.[8] We shall address these claims as two distinct issues.

Our standard of review in cases involving challenges to the involuntary termination of parental rights is well settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). Moreover:

> there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to

---

[8] In an ancillary fashion, Father also mentions in his brief that CYS failed to provide reasonable efforts to reunify him with Child. This peripheral and largely undeveloped issue will be addressed in our discussion of Father's challenge to notice.

- 10 -

second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re I.E.P.*, 87 A.3d 340, 343-344 (Pa. Super. 2014) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012)) (internal citations omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, governs termination of parental rights, and it requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). *See also In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*) (the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). The "standard of clear and convincing evidence is defined as testimony that is so

'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" ***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)). Moreover, this Court may affirm the orphans' court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Here, the orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1). Orphans' Court Opinion, 7/23/18, at 7. Section 2511 provides, in relevant part, as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

As we noted previously, this issue is largely tangential.[9]  Father offers very limited argument specific to Section 2511(a) or (b) and claims only that he "did not evidence a settled purpose of relinquishing his parental claim to [Child] at any point in time.  Nor has he refused to preform parental duties." Father's Brief at 21. We conclude that Father is entitled to no relief.

The orphans' court addressed this issue as follows:

> The testimony regarding Father's failure to perform his parental duties was clear and convincing. Father has worked as an auto mechanic … since around 2003, and returned to his place of employment after his latest imprisonment.  He never lived with Mother, who at the time of [Child's] birth [in September of 2013], was residing with some other man. Father had suspicions about Mother's drug use, but [he] never sought custody. Although he knew Mother's address and had her cooperation, he never even saw [Child] until she was more than a year old, and then, only through the Mother's screen door. Only two or three times thereafter did he have any substantive contact with [Child], the last instance being in November 2015. The minor never received any cards or birthday or Christmas presents from him (and did not recognize him when he appeared at the hearing last November). Father would not even acknowledge paternity when Mother filed for child support, thus requiring genetic testing[,] and a contempt Order was issued on February 2, 2016, for [Father's] failure to pay.  Father had notice of the dependency proceeding, and at that time communicated with Mother, and yet did nothing then, or while subsequently incarcerated, to participate in [Child's] life.  He has not since sent her letters, cards or presents, or attempted

---

[9] Because Father provides only general statements of law without reference to the record or pertinent citations to relevant legal authority, we could conclude that Father has waived any issues concerning Section 2511(a) and (b). *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (concluding that the appellant waived challenges regarding  Sections 2511(a) and (b) by not including those claims in her statement of questions presented and in failing to develop an argument).  However, because Father has provided a truncated argument, we decline to find waiver.

> otherwise to communicate with her. He has not provided for her physical or emotional needs beyond, perhaps, paying a small portion of the court-ordered support. The termination of [Father's] parental rights is thus warranted, and [it] is in the best interest of [Child], who is now almost five years of age and has resided with [her foster/pre-adoptive parents] for nearly two years.

Orphans' Court Opinion, 7/23/18, at 8-9 (footnotes omitted).

The orphans' court's conclusions are supported by the record. For over six months preceding the filing of the petition for termination of parental rights, Father evidenced a settled purpose of relinquishing a parental claim to Child and failed to perform parental duties. 23 Pa.C.S. § 2511(a)(1). Thus, this issue lacks merit.

With respect to Section 2511(b), the court must determine whether a bond exists between Father and Child and whether the termination of parental rights would destroy an existing, necessary, and beneficial relationship. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted). "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). Herein, Child did not recognize Father and Father had almost no contact with Child throughout Child's life. Thus, we discern no bond between Father and Child, and we find no error or abuse of discretion in the orphans' court's conclusion that terminating Father's parental rights is both warranted and in Child's best interests under 23 Pa.C.S. § 2511(b).

Turning to Father's primary challenge on appeal, which concerns his averment that he was not provided notice of the initial dependency proceedings, we conclude that no relief is due. The orphans' court addressed Father's challenge to notice as follows:

> Father contends in his statement of errors that service of the dependency petition upon him was improper under Rule 405(c) of the Pennsylvania Rules of Civil Procedure and Rule 1331 of Title 237 of the Pennsylvania Administrative Code. The latter directs service of the petition upon *inter alia* [Child's] guardian by first class mail and by certified mail, return receipt requested, and the filing of an affidavit of service prior to the adjudicatory hearing. *See also* Pa.R.J.C.P. 1331. A parent is entitled to such service even if he or she is not the child's custodial guardian. *See id.* Comment. Copies of other documents filed in dependency proceedings need only be served upon unrepresented parties "by first class mail addressed to the party's place of residence." *Id.* 1345(B)(2)(d); *see also id.* 1345(C) (requiring a certificate of service).
>
> The evidence shows that CYS sent a copy of the dependency petition to Father by both certified and first class mail to Father's post office address, without the latter having been returned, and with the former signed for by Father.[11] An affidavit of service was filed before the hearing was held. The fact that Father signed the return receipt after the date originally scheduled for the adjudicatory hearing is immaterial, particularly as this occurred eight days before the actual hearing. Father was sent a copy of the Order of February 9, 2016, rescheduling the hearing, by first class mail as directed by Rule 1345(B)(2)(d), as well as by certified mail; and the Clerk of Courts filed a Certificate of Service. The fact that Father signed this second return receipt after the hearing had been conducted does not invalidate service upon him.[12]
>
> ---
>
> [11] Father acknowledged his receipt of both mailings at the termination hearing. Tr., 6/1/18, at 10:11-19, 11:4-7.
>
> [12] The Court does not understand Father's allegation that Pa.R.C.P. No. 405(C) was violated, or how it is

applicable. That rule requires a signed return receipt unless "the defendant" refuses to accept service.

Even if the dependency proceedings were flawed and the adjudication were to be set aside, it was not a prerequisite to CYS filing its involuntary termination petition.[13] See 23 Pa.C.S.A. §§ 2512(a)(2) ("A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by ... an agency"); 2102 (definition of "agency"); Am. Pet. ¶17. Furthermore, the removal of [Child] by court order, as referenced in Sections 2511(a)(5) and (8), did not serve as the basis for terminating Father's parental rights.[14] Rather, the grounds for termination were that Father, as also alleged in the petition, "by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to [Child] or has refused or failed to perform [his] parental duties." 23 Pa.C.S.A. § 2511(a)(1). Father has not, in his statement of errors, challenged that determination other than to assert that this Court relied upon facts arising from the dependency proceeding.

[13] Consequently, CYS … did not have to "provide reasonable efforts to reunify the family" in seeking termination, or "use reasonable efforts" to obtain and utilize Father's "readily available contact information," as he maintains in his second and third allegations of error.

[14] [Child] was removed from Mother's care and custody, not Father's.

Orphans' Court Opinion, 7/23/18, at 6-7.

We agree with the orphans' court's analysis. Additionally, we agree with the Agency that Father's contention concerning notice of the dependency proceedings is misleading or a "red herring." CYS's Brief at 11. Father provides no authority for the proposition that his challenge to the notice requirements in the previously filed dependency proceeding is relevant here. Even if we were to conclude that there was a deficiency in the notice provided

- 16 -

to Father in the dependency action, which we do not,[10] Father's challenge to notice during the dependency proceedings has no bearing on the petition to terminate his parental rights. There is no requirement that a child be adjudicated dependent prior to the filing of a termination petition under the Adoption Act.

Moreover, despite Father's protestations to the contrary,[11] CYS was not required to provide efforts to reunite Father and Child prior to the involuntary termination of Father's parental rights. **See In re D.C.D.**, 105 A.3d 662, 672 (Pa. 2014) (stating that Section 2511 does not require that an agency provide reasonable efforts to reunify a parent with his child prior to the agency petitioning for termination of parental rights). Father has failed to establish any error of law or abuse of discretion in the order that terminated his parental rights to Child.

In sum, we opine that the orphans' court properly terminated Father's parental rights under Section 2511, and Father's argument concerning notice of the prior dependency action is specious and warrants no relief. Father's challenge to the termination of his parental rights is meritless. Accordingly, we affirm the June 7, 2018 order.

Order affirmed.

_____

[10] **See** Orphans' Court Opinion, 7/23/18, at 2-7 (finding that Father received notice of the dependency proceedings).

[11] Father's Brief at 13, 20.

- 17 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/6/2019