J-S40043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF G.A.M., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.M., NATURAL MOTHER | : : : : : : : : | No. 529 WDA 2019 |

Appeal from the Order Entered March 11, 2019
In the Court of Common Pleas of Crawford County Orphans' Court at
No(s):  2018-28

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                **FILED AUGUST 12, 2019**

L.M. (Mother) appeals from the order entered in the Court of Common Pleas of Crawford County (orphans' court) terminating her parental rights to her son, G.A.M. (Child) (D.O.B. 12/21/16) and permitting the adoption of Child to proceed without further notice to or consent of his parents.[1]  We affirm.

We derive the following relevant facts and procedural history of this case from the orphans' court's March 11, 2019 opinion and our independent review of the certified record.  On December 21, 2016, Children and Youth Services of Crawford County (CYS) obtained an emergency order because Mother was incarcerated when Child was born.  Child was experiencing withdrawal

_____

[1] The order also terminated the parental rights of Child's natural father, K.B. (Father).

_____

*   Retired Senior Judge assigned to the Superior Court.

symptoms due to Mother's drug use during her pregnancy and also had a hole in his heart. Father could not be located. The orphans' court determined that Child should remain at the medical facility until discharged to his current foster parents. The court adjudicated Child dependent on January 10, 2017.

Previously, on April 27, 2016, Mother's other child, J.X.S., had been taken into CYS custody because of a drug-related incident that day at Meadville Medical Center where Mother and J.X.S. were found in a bathroom with Mother passed out with drug paraphernalia. J.X.S reported that she had put the needle in her arm. He also stated that he had urinated in a cup at the hospital for his mother. He was adjudicated dependent on June 1, 2016. He was placed in a foster home.

On May 15, 2018, CYS filed a petition seeking to terminate the parental rights of Mother and Father regarding G.A.M. as well as J.X.S. The orphans' court held three evidentiary hearings on the matter, in July, October and December 2018. Regarding G.A.M., the evidence showed that Mother was incarcerated four times between April 2016 and May 2018 for simple assault, public intoxication and probation violations for controlled substances. (*See* N.T. Hearing, 7/9/18, at 23). As of April 2017, Mother's overall compliance with CYS programming, including behavioral health therapy and drug and alcohol services, was moderate. (*See id.* at 24, 65). In May 2018, she was released to a voluntary drug treatment program at a duel diagnosis facility. (*See id.* at 23-24, 46-47; N.T. Hearing, 10/24/18, at 46, 62-63, 72). She

completed the program, entered a halfway house for one month and then moved into her father's home where she continues to reside. (**See** N.T. Hearing, 10/24/18, at 46, 61, 63, 68). Mother participated in anger management classes, is receiving mental health treatment, is enrolled in parenting classes, and works thirty hours per week at a pizza restaurant. (**See** (Trial Court Opinion, 3/11/19, at 8).

Child has been in foster care with the same family since his birth. (**See** N.T. Hearing, 10/24/18, at 79). He gets along well with the three other children in his foster family and refers to his foster parents as "mama and daddy." (**Id.** at 90; **see id.** at 89). Mother has never performed parental duties for Child because she has been incarcerated for significant periods of time and/or struggling with drug addiction. (**See id.** at 69-70). While she has participated in supervised visitation with Child, she has not developed a parental relationship with him. (**See** N.T. Hearing, 7/09/18, at 64, 83).

On March 11, 2019, the orphans' court entered its order terminating Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b).[2] This timely appeal followed. Mother and the orphans' court complied with Rule 1925. **See** Pa.R.A.P. 1925(a), (b).

---

[2] Section 2511 of the Adoption Act provides, in relevant part, as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

Mother first argues that the orphans' court erred in determining that no bond exists between her and Child and that termination would best serve Child's needs and welfare. (*See* Mother's Brief, at 10-12).[3] Mother maintains that she has a strong emotional bond with Child and that a continued relationship is in his best interests. (*See id.*).[4]

"Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis." *In re Q.R.D.*, 2019 WL 2590611, at * 3 (Pa. Super. filed June 25, 2019). Initially, "[t]he party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). "Provided that the

_____

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b).

[3] "The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Interest of M.V.*, 203 A.3d 1104, 1111 (Pa. Super. 2019) (citation omitted).

[4] Mother does not dispute that termination was warranted under Section 2511(a); she instead argues that section (b) was not met. (*See* Mother's Brief, at 11).

court determines the parent's conduct warrants termination of his or her parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *Id.* (citation omitted).

"With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child." *Id.* at * 6. "Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *Id.* (citation omitted). "It is well settled that [i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *Id.* (citation omitted). "This Court has emphasized that although a parent's emotional bond with her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the trial court when determining what is in the best interest of the child." *Id.* (citation omitted). "Finally, [i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *Id.* (citation omitted). "The extent of any bond analysis, therefore,

necessarily depends on the circumstances of the particular case." ***Id.*** (citation omitted).

Here, the orphans' court explained:

> . . . Mother, at the time [Child] was born, was incarcerated.
>
> [Child], since the time of his birth, has been in foster care. The evidence of record indicates that Mother has never performed parental duties for [Child], as she had been incarcerated for significant periods of time and or suffering from drug addiction. While Mother had, based on the evidence of record, participated in supervised visitation with [Child], Mother was unable, given the circumstances, to have a parental relationship with Child, due in part to the fact that [he] was unable to develop a meaningful relationship, given their limited interaction.
>
> [Child] has solely been provided for by [his foster] family since birth, and credible evidence of record indicates that he is doing well in their care. Credible evidence of record indicates that [Child] has been fully accepted into [his foster] family, and has a solid relationship with the family.
>
> \*　\*　\*
>
> . . . The [c]ourt does find that in [Child's] case, there is evidence that no bond exists between Mother and [Child]. Any bond that has developed has developed only since the petition was filed and frankly the record is thin as to the extent and nature of that relationship. There is no evidence of historical bond and no evidence of a meaningful mother/child relationship. To the extent that there is some nominal or modest bond that has begun to develop, it is not enough to save this case from termination of the relationship. In this context, termination is clearly in the best interest of the Child. . . .

(Trial Ct. Op., at 11, 16-17).

After review of the record, which fully supports the orphans' court's findings, we conclude that it did not err in concluding that no bond existed between Mother and Child, and that termination would serve Child's best

interests. *See Interest of M.V.*, *supra* at 111; *In re Q.R.D.*, *supra* at * 6. Mother's first issue merits no relief.

Mother next contends that because her parental rights to Child's older half-brother, J.X.S. (D.O.B. 10/1/11), were not terminated, termination of her rights with regard to Child does not serve his best interests. (*See* Mother's Brief, at 12-14). Mother essentially rehashes the best interests argument she presented in her first issue, with an added focus on the fact that the court declined to terminate her rights to J.X.S. (*See id*.).

The orphans' court explained its differing conclusions regarding the half-brothers by pointing to "direct, credible evidence of record of a strong, meaningful, existing bond" between Mother and J.X.S., which witnesses characterized as "loving." (Trial Ct. Op., at 14; *see also* N.T. Hearing, 7/9/18, at 28). The court further determined that the "bond that exists between [J.X.S.] and Mother is not the same as her relationship with [Child]." (Trial Ct. Op., at 16). The record reflects that the orphan's court carefully considered Mother's relationship with each son and made an appropriate determination that termination was in Child's best interests for the extensive reasons discussed above.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/12/2019</u>