J-S24018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 710 EDA 2022 |

Appeal from the Decree Entered February 8, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000043-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: R.N.G.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 711 EDA 2022 |

Appeal from the Decree Entered February 8, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000617-2021

BEFORE:   PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 12, 2022**

S.S. ("Mother") appeals from the decrees,[1] entered in the Court of

Common Pleas of Philadelphia County, terminating her parental rights to her

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We have consolidated Mother's appeals, *sua sponte*.  **See** Pa.R.A.P. 513.

minor children, R.N.G.S., born July 2015, and N.S., born December 2008 (collectively, "Children"). After our review, we affirm.

This family originally came to be known by the Department of Human Services ("DHS") in 2015. In February 2019, DHS received a report that Mother had left Children home alone, unsupervised, for three days. *See* Petition for Involuntary Termination, 10/21/21, Exhibit A at ¶ h. The report alleged that "the home was in a deplorable state; that there were dirty dishes and debris throughout the home; and that there might be decaying matter inside the home because the home was infested with houseflies." *Id.* Children "were not attending school for those days. And they were also starving. They didn't have [any] food to eat." N.T. Termination Hearing, 2/8/22, at 21. During the period Children were left alone, Mother was in New Jersey. *Id.* at 23. Children informed members of the Philadelphia Police Special Victims Unit that their maternal grandfather was supposed to have been caring for them, but had not visited the home in several days. *See* Petition for Involuntary Termination, 10/21/21, Exhibit A at ¶ i.

On February 19, 2019, DHS obtained orders of protective custody for Children and, at a February 21, 2019 shelter care hearing, the court ordered Children's temporary commitment to stand. *Id.* at ¶ m. An adjudicatory hearing was held on April 2, 2019, after which the court adjudicated Children dependent and committed them to the custody of DHS. *See* Order of Adjudication and Disposition, 4/2/19. The court referred Mother to the Clinical Evaluation Unit ("CEU") for a dual-diagnosis assessment and random drug and

alcohol screens. *Id.* The court also ordered Mother to comply with the criminal court's DUI program, engage in anger management, sign necessary releases, and referred her to Achieving Reunification Center ("ARC") for appropriate services. *Id.* The court granted Mother weekly supervised visitation. *Id.*

The court held multiple permanency review hearings for Children, at which time it regularly re-referred Mother to CEU for dual-diagnosis assessments and random screens, and to ARC for services including anger management. Mother never progressed beyond supervised visitation with Children.

DHS filed petitions to involuntarily terminate Mother's rights to Children pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). On February 8, 2022, the court held a hearing, by which point Children had been in care for three years. Children were both represented by Jo-Ann Braverman, Esquire, who also acted as guardian *ad litem* ("GAL").[2] At the hearing, Milenika Colon, CUA case manager, testified that Mother's case plan objectives were to: follow all court orders; maintain visits with Children; comply with her probation; participate in anger management and parenting classes; engage in mental health treatment both alone and with Children; and ensure Children's medical and dental were up to date. N.T. Termination Hearing,

---

[2] *See In Re: T.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

2/8/22, at 21-22. Colon testified that Mother completed four cycles of anger management in 2019, but never went back, and her case was closed on November 12, 2019. *Id.* at 22. Mother attended one day of parenting classes and failed to complete the course. *Id.* She also failed to: engage in mental health treatment, either individually or with Children; comply with her court-ordered drug and alcohol screens; or maintain Children's medical and dental care. *Id.* at 23-24, 26. Colon testified that she had no reason to believe that Mother was aware of any of the educational, therapeutic, or medical needs of Children. *Id.* at 26-27. She also was unaware of any holiday cards or gifts sent by Mother to Children. *Id.* at 27. In short, Mother has failed to comply with any of her single case plan objectives. *Id.* at 24.

Colon testified that she personally supervised one of Mother's visits with R.N.G.S. and two of her other Children in September 2021.[3] Colon stated that, during that visit, "[M]other was not too . . . focused on the visit. She was on the phone. And it was just—she was not too . . . interested in seeing the kids at that moment." *Id.* at 28. Colon testified that she last spoke with Mother in December 2021, after she arrived late for a visit with Children at the agency. Colon stated:

> I went to talk to [Mother] to tell her that the visit was canceled
> because she arrived late and the kids were not there, and [M]other

_____

[3] Mother has a third daughter, as well as a son, who have also been removed from her care. They are not the subjects of the instant termination proceedings. N.S. does not attend visitation with her Mother, as she "does not want to have contact with mom at all." N.T. Termination Hearing, 2/8/22, at 29.

got really upset and started saying that we always change the date and time and she's not aware and that she . . . works. And I explained to [Mother] that in order for her to have a visit, she needs to arrive on time because we only give them 15 minutes to arrive late.

And I also . . . explained to her all of the objectives that she needs to complete in order to get her kids back, but [M]other . . . was still being mad at me because I canceled the visit and didn't tell her until she arrived at the office. . . .

And I also asked [M]other—since she was so upset that the day was changed for the visit, I asked [M]other what day worked for her better, and she [kept] the same day[.]

*Id.* at 25-26.

Colon testified that she had not been able to contact Mother since mid-December 2021 because "the phone number that I have [for Mother] . . . doesn't work." *Id.* at 26. Mother never reached out to Colon, despite having Colon's phone number. *Id.*

Finally, Colon testified that both Children are in foster homes that are pre-adoptive resources, and that Children's foster mothers meet their emotional, educational, spiritual, and medical needs. *Id.* at 30, 32. Colon stated that it would cause neither child irreparable harm if Mother's rights were terminated and that it would be in Children's best interests to change the goal to adoption. *Id.* at 30-33.

Mother also testified at the termination hearing. She stated that she had finished parenting classes and "ha[s] the letter at home[.]" *Id.* at 42. She further testified that she attended therapy for approximately four months, but was told that it was "no longer necessary." *Id.* at 43. She stated that a psychiatrist at Congreso "said that I was fine." *Id.* Mother testified that she

"took about ten samples of urine in the city" and is currently enrolled in anger management. *Id.* at 44. Mother presented the court with a purported lease for a residence on North Third Street, but the court refused to admit it because "[i]t's not self[-]authenticating. It's a standard lease that anybody can pick up in a[n] Office Depot and fill out themselves."[4] *Id.* at 47. Mother stated

---

[4] In addition, the following exchange occurred on cross-examination of Mother by Children's counsel/GAL:

Q: Ma'am, you said that you live in a house, correct?

A: Yes.

Q: Okay. But this lease that you purported to have, it says apartment, second floor apartment.

A: Yes, the house is divided. I live upstairs. Downstairs is for other people, another family.

\* \* \*

Q: Okay. And you said you returned from Florida last month? So[,] where were you living for the last—

A: Well, I have lived here longer than one month. I moved to this place a month ago because I'm working and I moved to this place.

Q: Okay. So why does the lease say the starting date is February 1st?

A: I moved in a month ago, but the payment is going to start on February 1st.

Q: Okay. You also said you live alone?

A: I lived alone in Miami, and I live alone here now.

Q: So who is Benny Martes?

*(Footnote Continued Next Page)*

that she was not able to attend visits with Children because "the schedule they gave me conflicts with my work schedule." ***Id.*** at 50.

At the conclusion of the hearing, the court terminated Mother's parental rights under subsections 2511(a)(1), (2), (5), (8)[5] and (b), indicating that it

_____

A: He's a friend who helps me as a cosigner.

Q: He's listed as a tenant on this purported lease?

A: He just recommended me. He put in a word for me.

N.T. Termination Hearing, 2/8/22, at 53-54.

[5] The relevant grounds for termination set forth under section 2511(a) are as follows:

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within

*(Footnote Continued Next Page)*

found Mother's testimony "non-believable . . . created, manufactured, [it] has nothing to do with the reality of this case." *Id.* at 57. The court concluded that:

> the real evidence[] remains that [M]other has . . . done little or nothing to remove the impediments that brought [C]hildren into care when they were brought in after being abandoned by [M]other for a three-day period. The same pattern continued and emerged. That is, [M]other never took the time to be a parent to these children. . . .
>
> What does exist after the smoke is cleared is that these children have been parented by someone else. . . . And these children's needs were met by someone else during the period and after when the children were removed from [M]other.

*Id.* at 57-58.

---

> a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) & (8).

Mother filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. She raises the following issues for our review:

1. Whether the trial court erred in determining that the parental rights of [Mother] are forever terminated insofar as[:]

   a. Under 23 Pa.C.S.A. [§] 2511(a)(1)[,] Mother's consistent compliance with her visitation schedule evidenced to the court a settled purpose of maintaining an ongoing relationship with [C]hild[ren].

   b. Under 23 Pa.C.S.A. [§] 2511(a)(2)[,] the conditions which led to the placement of [C]hild[ren] were[,] in fact[,] being addressed by [] Mother through her successful mental health treatment, and as such, no evidence existed that [] Mother could not, or would not, remedy these conditions.

   c. Under 23 Pa.C.S.A. [§] 2511(a)(5)[,] there was no evidence submitted that the conditions which led to the removal of [C]hild[ren] could not, or would not, be remedied within a reasonable amount of time, insofar as Mother submitted documentation that clearly illustrated her consistent compliance and dedication to her mental health[,] as well as [her ability] to provide a stable home for [C]hild[ren] with a lease she attempted to submit[,] as well as a letter from her employer.

2. Whether the trial court erred in finding that[,] under 23 Pa.C.S.A. [§] 2511(a)(8), termination of parental rights would best serve the needs of [C]hild[ren], insofar as Mother had involuntarily [gone] to see a psychiatrist and did an intake for anger management, consistently was available to visit with [C]hild[ren], and evidenced the ability to provide a stable home, all of which were objectives of her Single Case Plan, in the hope of being reunified with [C]hild[ren].

Brief of Appellant, at [7] (unnecessary capitalization omitted).

Our standard of review in cases involving the involuntary termination of parental rights is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

*Interest of M.V.*, 203 A.3d 1104, 1111 (Pa. Super. 2019), quoting *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S.A. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S.A. § 2511(b)).

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

Before filing a petition for termination of parental rights, the Commonwealth is required to make reasonable efforts to promote reunification of parent and child. However, the Commonwealth does not have an obligation to make such efforts indefinitely. The Commonwealth has an interest not only in family reunification but also in each child's right to a stable, safe, and healthy environment, and the two interests must both be considered.

*In re Adoption of R.J.S.*, 901 A.2d 502, 507 (Pa. Super. 2006) (citations omitted).

We address Mother's claims together, as she does so in her brief.[6] Mother asserts that the trial court erred in terminating her parental rights, where the Agency failed to meet its burden by clear and convincing evidence as to any of the four argued statutory grounds for termination. Prior to addressing the merits of Mother's claims, we must determine whether she has waived them.

---

[6] We note that the argument section of Mother's brief includes a challenge to the trial court's grant of a goal change to adoption. However, Mother did not preserve this claim in her Rule 1925(b) statement, nor did she include it in her statement of questions involved. Accordingly, the claim is waived. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466, n.3 (Pa. Super. 2017) (appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal); Pa.R.A.P. 1925(b)(4)(vii) (issues not included in Rule 1925(b) statement are waived).

When briefing the issues that have been preserved for appeal, it is an appellant's duty to present arguments that are sufficiently developed for our review. *In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012). "The brief must support the claims with pertinent discussion, with references to the record[,] and with citations to legal authorities." *Id.*, quoting *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007). This Court "will not act as counsel and will not develop arguments on behalf of an appellant. When defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Hardy*, 918 A.2d at 771.

Here, Mother's argument as to the four relevant subsections of section 2511(a) consists of one sentence each, with no citations to the record, or to any authority other than the subsections themselves. Indeed, Mother simply restates, *verbatim*, her statement of questions involved.

Because Mother's argument consists only of bald claims, unsupported by either citations to the record or to relevant case law, we are constrained to conclude that she has waived her claims. *See* Pa.R.A.P. 2119(b)-(c) (requiring citation to legal authority and reference to the record in appellate briefs); *Commonwealth v. Hunzer*, 868 A.2d 498, 516 (Pa. Super. 2005) (holding appellant waives claim upon failure to cite any legal authority in support of argument in appellate brief).

Even if Mother had not waived all of her claims, she would be entitled to no relief. Nearly all of the points raised by Mother in support of her

- 12 -

appellate claims were refuted by caseworker Colon's testimony at the termination hearing, which the trial court found to be "clear, persuasive, and credible." Trial Court Opinion, 5/3/22, at 22. Conversely, the trial court found Mother's testimony to be "self-serving and not believable." ***Id.*** Moreover, the documentation Mother presented to the court was of questionable provenance, to say the least. ***See, e.g., supra*** note 3 (cross-examination of Mother regarding purported lease). It is readily apparent from the evidence adduced at the termination hearing, and discussed ***supra***, that the conditions which led to Children's placement continue to exist, and that Mother cannot or will not remedy them within a reasonable period of time. ***See*** 23 Pa.C.S.A. § 2511(a)(5); ***see also In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc) (we may affirm trial court's decision regarding termination of parental rights with regard to any single subsection of section 2511(a)). Accordingly, we affirm the decision of the trial court to terminate Mother's parental rights to Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2022