J-A28012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: H.B., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.L.V., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 855 MDA 2021 |

Appeal from the Decree Entered June 8, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2021-0473

| IN RE: A.B., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.L.V., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 856 MDA 2021 |

Appeal from the Decree Entered June 8, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2021-0474

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:               **FILED: DECEMBER 3, 2021**

T.L.V. ("Mother") appeals from the decrees,[1] entered in the Court of

Common Pleas of Lancaster County, Orphans' Court Division, involuntarily

---

[*] Former Justice specially assigned to the Superior Court.

[1] We have, *sua sponte*, consolidated these appeals.  **See** Pa.R.A.P. 513;
Pa.R.A.P. 2138.

terminating her parental rights to her minor children, H.B., born in October 2015, and A.B., born in November 2018 (collectively, "Children").[2]  Counsel has filed an *Anders*[3] brief and accompanying petition to withdraw on appeal. After careful review, we affirm and grant counsel's petition to withdraw.

A.B. was placed in the care of the Lancaster County Children and Youth Social Service Agency ("Agency") on December 21, 2018, less than one month after her birth, at which time both she and Mother had tested positive for heroin.  N.T. Termination Hearing, 4/22/21, at 20.  Due to withdrawal symptoms, A.B. was hospitalized for three weeks following her birth.  *Id.* Mother and Father (collectively, "Parents"), who never married, were homeless at the time of A.B.'s birth.  *Id.*  On January 24, 2019, the court issued an order of adjudication and disposition for A.B., finding her to be a dependent child.  Trial Court Opinion, 8/11/21, at [2].  Mother was given a permanency plan, which established a primary permanency goal of reunification and a concurrent permanency goal of adoption.  *Id.*  Mother's permanency plan included the following objectives:  (1) remain free from drugs and misuse of alcohol; (2) learn and use good parenting skills; (3) be

_____

[2] Children's father, G.B. ("Father"), died of a fentanyl overdose in December 2020.  *See* N.T. Termination Hearing, 4/22/21, at 32.

[3] *Anders v. California*, 386 U.S. 738 (1967).  *See In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992) (extending *Anders* principle to appeals involving termination of parental rights and requiring counsel seeking to withdraw to conscientiously and thoroughly review record, petition court for leave to withdraw, and submit *Anders* brief).

financially stable in order to provide for herself and A.B.; (4) obtain and maintain a home free and clear of hazards for herself and A.B.; and (5) maintain an ongoing commitment to A.B. *Id.* at 7.

By the time of the permanency hearing for A.B., held on June 27, 2019, Mother had completed a drug and alcohol evaluation, but had not been attending the group and individual sessions as recommended. Mother denied that she had relapsed when confronted by her caseworker. *Id.* The court found Mother to be minimally compliant with her permanency plan. *Id.* at 2-3.

On August 22, 2019, the Agency filed a petition for temporary custody of H.B., then almost four years old. *Id.* at 1. H.B. had originally been living in an appropriate home with her maternal grandfather in New Jersey. *Id.* at 7; N.T. Termination Hearing, 4/22/21, at 21. However, because maternal grandfather lived in New Jersey and Mother was in Pennsylvania, Mother arranged for H.B. to live with T.S., a family friend living in Lancaster. N.T. Termination Hearing, 4/22/21, at 21. However, at some point, T.S. made it clear to Mother that H.B. was no longer welcome in her home. *Id.* at 22. Mother then took H.B. to live with her and Father in a tent in the woods. *Id.* When the Agency questioned Parents regarding H.B.'s living arrangements, Parents indicated that she was living with another of their friends, but would not provide any contact information for that person. *Id.* at 23. When the Agency could not confirm where H.B. was living, it petitioned for temporary custody. *Id.* at 24.

A shelter care hearing was held with regard to H.B. on August 26, 2019, at which time it was reported that Parents had tested positive for amphetamines and methamphetamines and were living in a tent in the woods. Trial Court Opinion, 8/11/21, at [8]. The court issued a shelter care order granting the Agency temporary custody of H.B., who was subsequently placed in the same home as A.B. *Id.* at [3], [8]. The court held an adjudicatory hearing for H.B. on September 12, 2019, at which time Parents agreed that the Agency had sufficient proof to support a finding of dependency. *Id.* at [8]. The court approved a permanency plan for H.B. that was identical to the plan issued for A.B. *Id.* at [9].

Mother's caseworker, Andy Gonzalez, attempted to meet with her on July 11, 2019, August 15, 2019, August 22, 2019, August 29, 2019, and September 5, 2019, to help her get into a rehabilitation program. N.T. Termination Hearing, 4/22/21, at 25. However, on each of those occasions, Mother "either [declined] to meet with [Gonzalez] or just didn't show up." *Id.* Following the adjudicatory hearing on September 12, 2019, Mother met with Gonzalez and agreed to begin rehabilitation at Nuestra Clinica. *Id.* at 25. However, after initially making an appointment for an intake at the clinic, she failed to attend. *Id.* at 25-26.

After numerous attempts, Mother completed a detoxification program at Pyramid Rehabilitation ("Pyramid") on October 15, 2019. Trial Court Opinion, 8/11/21, at [10]; N.T. Termination Hearing, 4/22/21, at 26. Upon discharge, Pyramid arranged for Mother's transfer to Vantage House, where staff "would

be able to transport her and . . . help her get to the visitations with [Children], [and] help her set up with housing, . . . employment, . . . and mental health and drug and alcohol [treatment] providers." N.T. Termination Hearing, 4/22/21, at 26. However, on October 25, 2019, Mother absconded from the van transporting her to Vantage House and she failed to enter the program. *Id.* at 26-27; Trial Court Opinion, 8/11/21, at [10].

On November 6, 2019, Mother entered Cove Forge Rehabilitation Center, where she completed treatment on December 6, 2019. N.T. Termination Hearing, 4/22/21, at 27. After living at Nicholas House for recovery for a time, Mother again began drug and alcohol treatment, this time at Naaman Center, on January 20, 2020. *Id.*

A permanency review hearing for Children was held on February 12, 2020, at which time Mother was undergoing intensive outpatient treatment for substance abuse and living in a recovery home. Trial Court Opinion, 8/11/21, at [9]. Another permanency review hearing was held on June 26, 2020, at which time Mother had left the recovery house and was living with Father in a single room in Lancaster City. *Id.* A third permanency review hearing was held on November 6, 2020, at which time Mother was attending drug and alcohol counseling and living in transitional housing not appropriate for Children. *Id.* at [9]-[10].

Mother began drug and alcohol treatment from Pennsylvania Counseling in June 2020, from which she was unsuccessfully discharged on April 1, 2021. N.T. Termination Hearing, 4/22/21, at 27-28. On July 7, 2020, Mother was

referred to a parent educator, with whom she began working on August 20, 2020. *Id.* at 33. Mother was ultimately unsuccessfully discharged from the parenting program on March 30, 2021, due to a lack of commitment. *Id.* On April 21, 2021—the day before the termination hearing in this matter—Mother underwent a pre-visitation drug screen, at which time she tested positive for THC, ecstasy, methamphetamine, amphetamines, and fentanyl. *Id.* at 28.

At the termination hearing, Caseworker Gonzalez testified that Mother had been "very inconsistent and unstable" with respect to her visitations with Children. He further testified that this inconsistency has had an adverse impact on H.B.:

> [H.B.] doesn't do well with surprises. She likes structure and, kind of, a schedule. So the resource mother has worked with [H.B.] on informing her so that she is not surprised and [has] a negative result. But [the resource mother] has also had to play a very delicate game because if she informs [H.B.], [H.B.] gets excited. And when [the visits] don't happen, [H.B.] has a meltdown, and it is very difficult for [H.B.] in that aspect, as well.

*Id.* at 29.

Gonzalez testified that A.B.'s situation is very different from H.B.'s, as A.B. has been in her resource home since birth and views her resource parents as "mom" and "dad." *Id.* at 37.

Gina Carnes, Esquire, was appointed as guardian *ad litem* ("GAL") for both Children.[4]  She testified as follows:

> I do believe it is in [Children's] best interest that [Mother's] rights be terminated.
>
> [A.B.] is too young to question regarding her preference or how she feels about the resource home.  But I do think it is obvious that she has been there since birth, that she is very bonded with the family and considers that [to be] her home.  She is also very bonded with her sister, [H.B.]
>
> Likewise, [with regard to H.B.], we heard from [H.B.'s therapist,] Lynette Nisley[,] what the issues are that H.B. is suffering with,[5]

---

[4] At the termination hearing, Attorney Carnes expressed her opinion that the appointment of separate legal counsel for the Children was unwarranted. ***See In Re: T.S.***, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests."). Specifically, Attorney Carnes stated that A.B., at age 2½, was "too young to question regarding her preference." N.T. Termination Hearing, 4/22/21, at 38. Regarding H.B., Attorney Carnes opined that the child's mental and developmental state would likely result in inconsistent answers regarding her preference and that, "more than anything," H.B. needs "to know definitively [with whom] she will reside so that she can move forward." ***Id.*** As a result, Attorney Carnes served in the dual role as Child's guardian *ad litem* and legal counsel.

[5] H.B. began therapy with Nisley in October 2019 "to help her process her trauma history with living in a tent and . . . to help her with emotional regulation and expression." N.T. Termination Hearing, 4/22/21, at 5. Nisley testified that H.B. has a bond with both Mother and her foster family. ***Id.*** at 6. Nisley agreed that H.B. "has a loyalty in the sense of wanting to please both," which "creates a lot of . . . emotional turmoil[.]" ***Id.*** Nisley testified that, while H.B. is bonded with both families, "it is not necessarily a question of who she has a bond with[,] but [a matter of] her being able to have a sense of stability." ***Id.*** at 7. She further opined:

*(Footnote Continued Next Page)*

but we do also know that she is also very closely bonded with [A.B.]

And she does have a bond with the resource family, as well. But, obviously, her stay there is not as turbulent as that which is coming out in the behaviors.

I don't believe that it is necessary for [H.B.] to be appointed legal counsel because of her current . . . mental state and where she is at developmentally[,] dealing with all of these stages. I don't know that, as her . . . therapist indicated, that we would ever get a consistent answer from her, and that, really, what she needs more than anything is to know definitively . . . the family with whom she will reside so that she can move forward.

And for all of those reasons, I . . . do believe that termination of [Mother's] rights is in [H.B.'s] and [A.B.'s] best interest.

*Id.* at 38-39.

The court held a termination hearing on April 22, 2021, for which Mother failed to appear.[6] On June 7, 2021, the court entered decrees

_____

[F]or children, especially as young as [H.B.], remaining in foster care and continuing to not know which family she needs to be loyal to, or who she is bonding with, she continues to struggle with that. And the longer she stays in that state of not really knowing, that causes as much, if not more, emotional damage than knowing which loss she is having, and processing that, and moving forward.

*Id.* Nisley also testified that H.B. has a "very strong bond" with A.B. *Id.* at 10.

[6] On March 11, 2021, Caseworker Gonzalez personally served Mother with a copy of the termination hearing notice. *See* N.T. Termination Hearing, 4/22/21, at 3; Affidavit of Service, 4/15/21. Mother had previously been served with a copy of the termination petition, as well as the Act 101 notice, and an affidavit of service was filed with the Clerk of the Orphans' Court. *See id.*; Affidavit of Service, 3/10/21. When Mother failed to appear for the hearing, the court granted her counsel, Allison Wright, Esquire, leave to withdraw from representing Mother at the hearing. *See* N.T. Termination
*(Footnote Continued Next Page)*

terminating Mother's parental rights to Children pursuant to 23 Pa.C.S.A. §§

2511(a)(1), (2), (5) & (8).[7] Mother filed a timely notice of appeal, as well as

_____

Hearing, 4/22/21, at 4. Attorney Wright never formally withdrew from her representation of Mother, and she has filed the **_Anders_** brief in this appeal.

[7] The relevant grounds for termination set forth under section 2511 are as follows:

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>>
>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control[,] or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied by the parent.
>>
>> . . .
>>
>> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time[,] and termination of the parental rights would best serve the needs and welfare of the child.
>>
>> . . .

_(Footnote Continued Next Page)_

a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2).

On appeal, counsel seeks to withdraw her representation of Mother. Accordingly, before reaching the merits of Mother's sole appellate issue, we must first address whether counsel has properly sought to withdraw from this appeal. In *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights. *Id.* at 1275. In these cases, counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit an **Anders** brief. *In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004). Pursuant to **Anders**, counsel must:

(1)    petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous;

(2)    furnish a copy of the [**Anders**] brief to the [appellant]; and

(3)    advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy [of] the court's attention.

---

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist[,] and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) & (8).

*Commonwealth v. Cartrette*, 3 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citation omitted). With respect to the third prong, this Court has held that counsel must "attach to [the] petition to withdraw a copy of the letter sent to [the] client advising [the client] of [his or her] rights." *Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005). In addition, an *Anders* brief must comply with the following requirements:

> (1)  provide a summary of the procedural history and facts, with citations to the record;
>
> (2)  refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3)  set forth counsel's conclusion that the appeal is frivolous; and
>
> (4)  state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Upon review, it appears that counsel has complied with the procedural requirements of *In re V.E.*, as set forth in *Anders* and its progeny. Counsel filed a petition to withdraw, certifying that she has reviewed the case and determined that Mother's appeal is frivolous. Counsel has also filed a brief, which includes a summary of the history and facts of the case, a potential issue that could be raised by Mother, and counsel's assessment of why that issue is frivolous, with citations to the record and to relevant legal authority. *See Santiago*, *supra*. Finally, counsel has sent Mother a letter advising her of her rights pursuant to *Millisock*, *supra*. Because counsel has complied

with the requirements of **Anders** and **Santiago**, we must now "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel raises the following issue in her **Anders** brief:

> Whether the [c]ourt erred in terminating Mother's parental rights to [Child] because [the Agency] failed to prove by clear and convincing evidence that Mother's parental rights should be terminated under 23 Pa.C.S.A. § 2511.

**Anders** Brief, at 8.

Our standard of review in cases involving challenges to the involuntary termination of parental rights is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.

**Interest of M.V.**, 203 A.3d 1104, 1111 (Pa. Super. 2019), quoting **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.  The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."  It is well established that a court must examine the individual

- 12 -

> circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S.A. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S.A. § 2511(b)).

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

> Before filing a petition for termination of parental rights, the Commonwealth is required to make reasonable efforts to promote reunification of parent and child. However, the Commonwealth does not have an obligation to make such efforts indefinitely. The Commonwealth has an interest not only in family reunification[,] but also in each child's right to a stable, safe, and healthy environment, and the two interests must both be considered.

*In re Adoption of R.J.S.*, 901 A.2d 502, 507 (Pa. Super. 2006) (citations omitted).

With respect to section 2511(a)(1),[8] our Supreme Court has held,

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998).

In addition,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-55 (Pa. Super. 2004) (citations omitted).

Here, the trial court explained its decision to terminate Mother's parental rights under section 2511(a)(1) as follows:

> Mother's addiction to heroin and other illegal substances is her biggest problem in not being able to parent the Children. Mother completed a detox program on October 1, 2019, at Pyramid Rehabilitation. But Mother then absconded and failed to attend the follow-up services afforded to her at Vantage House. Mother later (on December 6, 2019) completed a rehabilitation program at Cove Forge, but she failed to complete the necessary follow-up counseling. There were significant indications that Mother had again relapsed by the time of the termination of parental rights hearing on April 22, 2021; Mother tested positive for a host of illegal substances [the day before the hearing].

---

[8] We can affirm the trial court's decision regarding the termination of parental rights with regard to any single subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

These continuous failures to address her drug addiction—which is a necessary predicate to her reunification with the Children—indicates a settled purpose by Mother to relinquish her parental rights. Mother's addiction (and her lengthy absences while in treatment) also prevented her from performing parental duties in respect to the Children. While addiction is the core problem for Mother, as of the final hearing in the case[,] Mother had not satisfied any of the objectives on the [Children's] permanency plans (with the exception of remaining crime free).

. . .

It is apparent[,] based upon the record[,] that Mother remains unable to perform parental duties. The Children cannot wait indefinitely for Mother to have the ability to raise them in a safe and stable setting.

Trial Court Opinion, 8/1//21, at [18]-[20].

The record fully supports the trial court's determination that there exists clear and convincing evidence that termination is appropriate under section 2511(a)(1). Children were initially removed from Mother's care due to her drug addiction and resulting inability to provide appropriate housing and other parental care necessary to Children's well-being. While Mother has made numerous attempts at detoxification and rehabilitation, she has been unsuccessful in overcoming her serious addiction issues. Indeed, Mother tested positive for numerous controlled substances just the day before the termination hearing, for which she then failed to appear.

The testimony elicited at the termination hearing demonstrated Mother's failure to perform parental duties for a period of at least six months prior to the hearing. *See* 23 Pa.C.S.A. § 2511(a)(1). This failure is a direct result of Mother's lack of commitment to the successful treatment of her addiction. *See* N.T. Termination Hearing, 4/22/21, at 25 (caseworker testifying as to

- 15 -

Mother's repeated refusal to meet with him regarding rehabilitation placement); *id.* at 25-26 (caseworker testifying to Mother's failure to follow through with intake appointment at counseling clinic); *id.* at 26-27 (caseworker testifying that Mother absconded from van on way to Vantage House program); *id.* at 27 (caseworker testifying that Mother was discharged from Pennsylvania Counseling for lack of commitment); *id.* at 29 (caseworker testifying that Mother's visitation has been "very inconsistent and unstable").

The erratic nature of Mother's visitations with Children has had a particularly adverse impact on H.B., who craves stability and structure. *See id.* at 7 (therapist testifying that lack of stability more emotionally damaging to H.B. than potential loss of bond with Mother); *id.* at 29 (caseworker testifying that H.B. likes structure and "has a meltdown" when Mother fails to appear for expected visit). Moreover, Mother has, for all intents and purposes, never served in a parental capacity for A.B., who has lived with her foster parents since birth and views them as "mom and dad."

In sum, Children's foster parents have provided them with a sense of safety and stability and are willing to be an adoptive resource. "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *Adoption of C.J.P.*, 114 A.3d 1046, 1054 (Pa. Super. 2015) (citation omitted). Accordingly, we find that the record amply supports the trial court's findings that termination was proper pursuant to section 2511(a)(1) where Mother has "evidenced a settled

purpose of relinquishing [her] parental claim to [Children]" and "has refused or failed to perform parental duties."  23 Pa.C.S.A. § 2511(a)(1).

Decrees affirmed.  Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/03/2021