J-A08022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: M.J.C. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.J.B., MOTHER | : : : : : : : | |
| | : | No. 1388 WDA 2021 |

Appeal from the Order Dated October 28, 2021
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2021-319 IVT

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: D.A.C., V | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.J.B., MOTHER | : : : : : : : | |
| | : | No. 1389 WDA 2021 |

Appeal from the Order Dated October 28, 2021
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2021-320 IVT

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED: MAY 24, 2022**

A.J.B. ("Mother") appeals from the orders,[1] entered in the Court of Common Pleas of Cambria County, Orphans' Court Division, terminating her parental rights to her minor children, D.A.C., V (born 8/2/15) and M.J.C. (born 10/16/18) (collectively, "Children").  Upon careful review, we affirm.

_____

[1] By order dated November 29, 2021, this Court consolidated Mother's appeals, *sua sponte*.  **See** Pa.R.A.P. 513.

Cambria County Children and Youth Service ("Agency") first became involved with this family after receiving a report, in December 2019, that Parents had failed to follow through with Synagis RSV shots[2] for M.J.C. Following at least four prior unsuccessful attempts to visit the family's home, the Agency made contact with Parents[3] on February 10, 2020. When Agency representatives visited the home, they found eight people residing in a two-bedroom trailer. *See* N.T. Termination Hearing, 10/20/21, at 13. The home's conditions were "deplorable, . . . the trailer was [structurally] unsafe, there were holes in the floor, . . . ho[a]rding conditions in the home with stuff everywhere and the children were very dirty." *Id.* at 13-14. Although it was February, there was no water or heat in the home. *Id.* at 14.

Children were removed from Parents' care on a safety plan and placed with their maternal aunt. Parents did not rectify the issues and, after hearings held on April 28, 2020, Children were found to be dependent by order dated April 30, 2020. Parents were given permanency goals, which included the following: (1) psychological evaluations; (2) drug and alcohol assessments;

_____

[2] Synagis is an antibody that helps decrease the risk of serious lung infections caused by Respiratory Syncytial Virus (RSV). The medicine is given by injection into the leg muscle, once a month for up to 5 months starting in November through March, to children under two years old who are at high risk for serious complications if they should get RSV. The injection is usually given at the doctor's office or at home by a nurse. https://www.childrensmn.org/educationmaterials/childrensmn/article/15829/synagis-palivizumab (last visited 5/6/22).

[3] Father's parental rights to Children were also terminated. He is not involved in this appeal.

(3) random drug screenings; (4) prohibition against consuming illegal drugs or alcohol; (5) successfully attend and complete parenting classes; (6) cooperate with Independent Family Services; and (7) maintain a clean, safe, and adequately furnished residence for a minimum of six months. Trial Court Order, 10/27/21, at ¶ 5.

A permanency review hearing was held on October 14, 2020, at which time the juvenile court found Mother to be non-compliant with her permanency review plan and concluded that no progress had been made toward alleviating the circumstances that led to the placements. *Id.* at ¶ 8. The court made the same finding after a second permanency review hearing on January 27, 2021; it also found aggravating circumstances due to Parents' failure to maintain substantial and continuing contact with Children for a period in excess of six months. *Id.* at ¶¶ 10, 11. The court changed the permanency goal for both Children to adoption. *Id.* at ¶ 11. After a third and final permanency review hearing on July 21, 2021, the court again found no compliance or progress and concluded that no further efforts need be taken to preserve and unify the family. *Id.* at ¶ 12.

The Agency filed termination petitions as to both parents on March 9, 2021, alleging grounds under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b). The court appointed counsel for Children; based upon "their respective ages and representations of counsel, the [c]ourt found no conflict between each child's legal . . . and best interest, nor between the children's interest to each other." Trial Court Order, 10/27/21, at ¶ 2.

- 3 -

The court also appointed counsel for Mother. Mother was personally served with notice of the petition and hearing date on August 19, 2021.[4] *See* Affidavit of Service, 8/19/21.

On the date of the hearing, October 20, 2021, Mother failed to appear. Prior to the commencement of the hearing, Mother's counsel requested a continuance because she had not been able to speak with Mother, who failed to respond to all correspondence from her. *See* N.T. Termination Hearing, 10/20/21, at 5. After determining that Mother had been properly served with notice of the petition and hearing, the court proceeded with the hearing.

May Popovich, casework supervisor with the Agency, testified at the termination hearing. Popovich testified that, at the time he was declared dependent, D.A.C., V, had never been in school and was "very behind." *Id.* at 23. He had "horrible dental problems" that, ultimately, required "caps all over his mouth[.]" *Id.* at 14. Popovich testified that D.A.C., V, suffers from speech delays as well as oppositional defiance disorder and "has never really learned to live by rules." *Id.* He is a "very difficult child" who "smears feces on walls, . . . bedding[,] and things like that." *Id.* As to M.J.C., Popovich testified that she was born 28 weeks premature and was drug-exposed. *Id.* at 24. Her behavior is "ok," although "she's a biter." *Id.* M.J.C. does not suffer from any developmental delays. *Id.*

---

[4] Mother also received Act 101 notice on February 2, 2021. *See* Letter from Chloe Barrett and May Popovich, 1/27/21 (receipt acknowledged by Mother's signature at bottom of letter on 2/2/21).

Popovich testified that Mother attended six out of 50 visitations with Children between April 2020 and June 2021. *Id.* at 19, 22. Mother was non-compliant throughout the life of the case and made no progress on her permanency goals. *Id.* at 18. Mother "didn't do any of the things that [she was] supposed to do in order to get the children back" and had "minimal contact with the agency and . . . with service providers." *Id.* at 19. All of Mother's required drug tests were either refused or showed positive results.[5] *Id.* at 29-30. In the six months prior to the filing of the petition, Popovich testified that Mother did not contact Children and did not come into the Agency office. *Id.* at 27. At the time of the termination hearing, the Agency did not know where Mother resided. *Id.* Popovich testified that Mother failed to remedy any issue that led to Children's placement and that the conditions that led to Children's removal still exist. *Id.* at 28.

Finally, Popovich testified that the agency had no indication that Mother was truly bonded to Children, "based on the lack of follow[-]through . . . and the lack of interest in visitation[.]" *Id.* at 33. Popovich opined that it would be in Children's best interest to have parents' rights terminated "and be adopted by a family who can meet their needs," and that Children would not be negatively impacted by termination. *Id.* at 34.

Dennis Kashurba, a licensed psychologist, performed an evaluation of Mother and was stipulated to be an expert in the field of psychology. Kasurba

---

[5] One test "wouldn't come up with a control line," which resulted in the test being declared invalid. N.T. Termination Hearing, 10/20/21, at 30.

testified that Mother presented with a "very flat affect, very depressed demeanor, [and] indicated that her normal level of depression is an 8 or 9 [on a scale of 0 to 10,] with 10 being an incapacitating amount." *Id.* at 59. Mother's speech was slurred and she manifested anxiety "by frequent face[-]picking." *Id.* Kashurba diagnosed Mother with

> opioid use disorder, other or unknown substance use disorder, methamphetamine and THC, physical abuse of adult as a victim, unspecified disruptive impulse control and conduct disorder, partner relational problem, parent/child relational problem, dependent personality disorder with histrionic symptoms, unspecified depressive disorder rule out dysthymia, which is a chronic low-grade depressive condition, and paranoid personality disorder.

*Id.* at 63.

> Kashurba concluded that:
>
> [Mother] clearly gave the impression she is not able to appropriately care for herself at this time, much less two young children. Interestingly, she never really talked about the children during the course of [the] evaluation.
>
> * * *
>
> My conclusion . . . is that [Mother] has myriad significant mental health issues that will adversely affect her [ability] to function independently in the parent role for the foreseeable future. Until such time as her mental health issues are addressed and she is able to extricate herself from her current life circumstances, there's little likelihood of her functioning as a competent parent.

*Id.* at 60, 62.

Kathy Scaife, an employee of Independent Family Services' home management program, testified as to her efforts to assist parents in

addressing and correcting issues within the home, "such as deplorable housing conditions and budgeting." *Id.* at 70. Scaife testified that "it was very difficult to even meet with them in the [beginning]." *Id.* Once she was able to meet with parents at their residence, she found "[a]bsolute deplorable conditions. . . . [T]here were holes all through the floors. I would not sit anywhere[,] and I had trouble standing anywhere in the home." *Id.* at 71. Scaife testified that she "absolutely [would] not" allow children in the home. *Id.* Scaife stated that she suggested renting a dumpster to clean out the property and "make the trailer more livable," but that parents refused to agree. *Id.* at 71-72. Scaife repeatedly attempted to contact parents, to no avail, and "neither parent made any attempt to . . . reach out to me for help with our services." *Id.* at 72. Scaife testified that

> [Mother's] conversation with me on the one occasion was about domestic violence and that she did not want me to tell [Father] that she was filing for public assistance. She wanted to do it on her own and not have him listed on the application. So I would say she was more fearful of that relationship than making any effort to reunify with her children.

*Id.* at 73.

Finally, Lucas Gumby, a family resource specialist with Justice Works Youth Care, testified that he was "tasked to help [parents] with parenting skills [and] to get [them] help connected to community resources." *Id.* at 76. Gumby testified that Parents were "not very" eager to work with him. *Id.* Gumby met with the family twice and testified that "[D.A.C., V] was more interacting with the parents because he knew them more, but [M.J.C.] more

ran around trying to play with the toys and wanted just to have fun." *Id.* at 77. When asked if Children were upset when the visit ended, Gumby testified that D.A.C., V, was "a little bit, but I guess it was kind of [that] he just wanted to just stay and play a little bit. But he was ready to go, actually[.]" *Id.* Gumby did not observe that either child had a bond with Mother. *Id.* He opined that neither child would be harmed in any way if Parents' rights were terminated, and that Parents did not appear to have any interest in regaining custody of Children. *Id.* at 78.

On October 27, 2021, the trial court entered an order terminating Mother's parental rights to both Children pursuant to sections 2511(a)(1), (2), (5), (8) and (b).[6] Mother filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

_____

[6] The relevant grounds for termination set forth under section 2511(a) are as follows:

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

*(Footnote Continued Next Page)*

Mother raises the following issues for our review:

1. Whether the trial court erred as a matter of law and/or manifestly abused its discretion in determining the Agency sustained its burden of proving the termination of [Mother's] parental rights is warranted under sections 2511(a)(2),[ (5) and/or (8)] of the Adoption Act?

2. Whether the trial court abused its discretion in denying [counsel's] request for a continuance of the hearing . . . so that counsel could ascertain Mother's whereabouts, consult with her, and Mother could attend?

---

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) & (8).

Brief of Appellant, at 7 (unnecessary capitalization omitted).[7]

Our standard of review in cases involving challenges to the involuntary termination of parental rights is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

*Interest of M.V.*, 203 A.3d 1104, 1111 (Pa. Super. 2019), quoting *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under

---

[7] Mother submitted identical briefs in both appeals.

- 10 -

23 Pa.C.S.A. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S.A. § 2511(b)).

> A parent must utilize all available resources to preserve the parental relationship[] and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.  Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

> Before filing a petition for termination of parental rights, the Commonwealth is required to make reasonable efforts to promote reunification of parent and child.  However, the Commonwealth does not have an obligation to make such efforts indefinitely.  The Commonwealth has an interest not only in family reunification but also in each child's right to a stable, safe, and healthy environment, and the two interests must both be considered.

*In re Adoption of R.J.S.*, 901 A.2d 502, 507 (Pa. Super. 2006) (citations omitted).

Mother first asserts that the trial court erred in terminating her parental rights, where the Agency failed to meet its burden by clear and convincing evidence that at least one statutory ground for termination was present.  Prior to addressing the merits of Mother's claim, we must determine whether she has waived it.

When briefing the issues that have been preserved for appeal, it is an appellant's duty to present arguments that are sufficiently developed for our review.  *In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012).  "The brief must support the claims with pertinent discussion, with references to the record[,]

- 11 -

and with citations to legal authorities." ***Id.***, quoting ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007). This Court "will not act as counsel and will not develop arguments on behalf of an appellant. When defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***Hardy***, 918 A.2d at 771.

Here, Mother begins her argument on this issue by reciting the four subsections of section 2511(a) relied upon by the trial court for termination, as well as section 2511(b). She then cites cases discussing the bifurcated analysis required of this Court on appellate review. Finally, she states the following:

> Mother contends that termination of her parental rights was improper under an analysis of any of the subsections of the Adoption Act relied upon by the Agency.

Brief of Appellant, at 13.

Mother's argument is woefully insufficient, where she has utterly failed to provide any citations to the record, or to point out any specific errors she believes to be attributable to the court. Accordingly, we find Mother's first claim to be waived.[8] ***Hardy***, ***supra***.

---

[8] Even if Mother's claim were not waived, we would grant her no relief. It is readily apparent from the evidence adduced at the termination hearing, and discussed ***supra***, that the conditions that led to Children's placement continue to exist, and that Mother cannot or will not remedy them within a reasonable period of time. ***See*** 23 Pa.C.S.A. § 2511(a)(5); ***see also In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc) (we may affirm trial court's

*(Footnote Continued Next Page)*

Finally, Mother claims that the trial court abused its discretion in denying counsel's request for a continuance to enable counsel to ascertain Mother's whereabouts and consult with her. Counsel asserts that she found out for the first time at the hearing that Mother had been incarcerated between June of 2021 and September 30, 2021. Following Mother's release, counsel did not have contact information for Mother and, therefore, "lacked any information that would have assisted counsel in her representation of Mother at the hearing[.]" Brief of Appellant, at 15. Counsel argues that she only found out subsequent to the hearing that Mother had been in rehabilitation at the time of the hearing. Accordingly, counsel argues that the trial court abused its discretion in denying a continuance. Mother is entitled to no relief.

This Court reviews a trial court's decision to grant or deny a continuance for an abuse of discretion. *Ferko-Fox v. Fox*, 68 A.3d 917, 925 (Pa. Super. 2013). "An abuse of discretion is more than just an error in judgment, and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." *Id.* (citation omitted).

Here, the record demonstrates that, on August 19, 2021, Mother was personally served by her caseworker, Chloe Barrett, with notice of the hearing

_____

decision regarding termination of parental rights with regard to any single subsection of section 2511(a)). Moreover, there was no evidence of a bond between Mother and Children, and those witnesses who were asked opined that termination would be in Children's best interest.

and the petition for involuntary termination. ***See*** Affidavit of Service, 8/19/21. The notice provided to Mother clearly stated as follows: "You are warned that even if you fail to appear at the scheduled Hearing, the Hearing will go on without you and your rights to your [Children] may be ended by the Court without your being present." Thus, Mother was aware of the petition, the date, time, and place on which the hearing would be held, and the possible consequences of her failure to appear, yet she chose not to contact her lawyer or appear for the hearing. We can discern no abuse of discretion on the part of the trial court in its decision to deny a continuance. ***Ferko-Fox***, ***supra***.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2022

- 14 -