J-A08029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.M., FATHER | : | |
| | : | |
| | : | No. 1013 WDA 2022 |

Appeal from the Decree Entered August 2, 2022
In the Court of Common Pleas of McKean County Orphans' Court at
No(s): No. 42-21-0232

| | | |
|---|---|---|
| IN THE INTEREST OF: X.S.-M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.M., FATHER | : | |
| | : | |
| | : | No. 1014 WDA 2022 |

Appeal from the Decree Entered August 2, 2022
In the Court of Common Pleas of McKean County Orphans' Court at
No(s): No. 42-21-0233

BEFORE:   STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED:  May 19, 2023**

C.M. ("Father") appeals from the decrees that granted the petitions filed

by McKean County Children and Youth Services ("CYS") to involuntarily

terminate his parental rights to his children, A.M. (a daughter born in October

_____

[*] Retired Senior Judge assigned to the Superior Court.

2017, and X.S.-M. (a son born in September 2020) (collectively, "Children").[1] We affirm.

CYS first became involved with this family on July 21, 2020, after employees at the hotel where Father and A.M. were staying reported concerns for A.M.'s safety to Bradford police officers. *See* N.T., 1/26/21, 8-9.[2] The responding officers found Father disheveled in the hotel lobby and scaring other guests. *See id.* Father displayed a basic lack of awareness of A.M.'s status and needs, including that her diaper desperately needed changing. *See id.* at 5, 9-10, 15-16, 25. From Father's confused speech and actions, the responding officers concluded that he was likely under the influence of methamphetamine. *See id* at 20-21.

A subsequent search of Father's hotel room revealed, *inter alia*, two unsheathed machetes within reach of A.M. *See id*. at 10-11, 13; N.T., 1/24/22, at 89-97. After being notified of these events, CYS petitioned for

---

[1] In addition to the orders terminating Father's parental rights, the Orphans' Court also entered orders terminating the parental rights of M.S. ("Mother") (collectively, "Parents"). Mother did not appeal those determinations or participate in this appeal.

[2] At the hearing on the involuntary termination petition, the court admitted the full dependency record for Children, which included the record and transcripts of Children's 2020 and 2021 dependency hearings. *See* N.T., 3/7/22, 7-9.

emergency custody of A.M., which the court granted in July 2020. After deeming kinship care unsuitable, CYS placed A.M. with a foster family.

At the time of these events, Mother temporarily resided in a different Bradford-area hotel. Approximately two months later, Mother gave birth to X.S.-M., at which time she and X.S.-M. both tested positive for methamphetamine. *See* N.T., 1/24/22, at 125-27, 133. Mother disclosed having used narcotics during her pregnancy. *See* N.T., 1/26/21, at 46-47, 56.[3] Father was at the hospital when CYS sought and obtained emergency custody of X.S.-M. in October 2020, and placed him with a foster family. *See* N.T. 1/24/22, at 125-27.

Following X.S.-M.'s removal from Parents' custody, CYS pursued concurrent objectives of adoption and reunification for Children. Father's goals required that he: (1) obtain and maintain appropriate housing; (2) complete a drug and alcohol evaluation; (3) undergo a mental health evaluation; (4) achieve and sustain sobriety; (5) provide drug screenings upon request; (6) provide medical releases to the agency; and (7) participate in visits and communications with Children. *See id*. at 99-101.

_____

[3] Mother later admitted to her continued drug use in 2021. *See* N.T., 1/24/22, at 102.

Father was initially granted supervised visitation rights. However, he and Mother failed to appear so many times for in-person visits, to which the Children had been transported, that the assigned CYS visit supervisor "lost count." *See id*. at 143-44.[4] On numerous occasions when Father did attend visits with Children, he appeared to be "under the influence," slept or argued with the CYS visit supervisor, and on one visit held X.S.-M. improperly with one hand so he could simultaneously look at Facebook on his phone. *See* N.T., 1/24/22, at 143-47, 155.

Father also often displayed aggressive and dangerous behavior towards CYS staff and once threatened to take Children. CYS required the intervention of the Pennsylvania State Police on multiple occasions to control Father. *See id*.

The court adjudicated Children dependent in February 2021.[5] The court also found that Children would face grave risk if Father's visits continued. *See* Juvenile Court's Order of Adjudication, 3/4/21, at 21; N.T., 2/8/21, at 11-14, 37, 43-47; 1/24/22, at 105-08, 117, 125, 150, 159. The court barred Father from visiting Children but indicated it would lift the restriction if Father made

---

[4] Of fifty-seven scheduled visits between July 2020 and February 2021, Father missed at least twenty-three. *See* N.T. 2/8/21, at 39.

[5] The juvenile court dated its orders February 26, 2021; however, the orders were not docketed until March 4, 2021.

- 4 -

substantial progress on his goals. *See* Juvenile Court's Order of Adjudication, 3/4/21, at 21. Father did not petition to have this restriction lifted, but in March 2021 and April 2021 participated in Mother's separate visits with Children in defiance of the court's restriction. *See* 1/24/22, at 108-09, 148; N.T., 3/7/22, at 50-53.

CYS social worker Richard Fry ("Fry") testified that Father made minimal progress toward his goals from September 2020 through September 2021, (when Fry's involvement in the case ceased), and Father refused to provide samples for use in drug screening. *See* N.T., 1/24/22, at 99-100, 103, 122, 132. CYS supervisor, Jonathan Braeger ("Braeger"), testified that since the inception of the case, Father had not once submitted to a drug screen or provided releases for services he had received to show that he had made any changes since the beginning of the case. *See* N.T. 3/7/22, at 60. CYS case worker Sarah Glover ("Glover") noted Father's unwillingness to provide a release for records of mental health services, and the difficulty she had finding or contacting him. *See* N.T. 6/8/22, at 20-25, 31, 33, 36.

In September 2021, CYS filed petitions to involuntarily terminate Parents' parental rights.[6] Concerning A.M., CYS sought termination pursuant

---

[6] The court had appointed Mark J. Hollenbeck, Esquire ("Attorney Hollenbeck,"), as guardian *ad litem* ("GAL") during the dependency proceeding, and Attorney Hollenbeck continued to represent Children during

to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and concerning X.M.-S., CYS sought termination pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). The court held hearings on the petitions in January, March, and June 2022. At the hearings, CYS presented testimony from Fry, Glover, Braeger, and Ashlyn Southard ("Southard"), a CYS case aide who provided transportation and helped supervise visits with the children. CYS also presented testimony from Children's respective foster parents. As of the first hearing on the involuntary termination petitions in January 2022, A.M. had lived with a foster family for eighteen months and X.S.-M. had lived with a foster family for fourteen months, and both had bonded with those families, not Father. *See* N.T, 1/24/22, at 106-07, 111, 128, 160. Glover testified at

_____

the termination of parental rights proceeding without the court entering separate orders as counsel. Although the Adoption Act requires an Orphans' Court to appoint children counsel in a contested termination proceeding, *see* 23 Pa.C.S.A. § 2313(a), "where there is no conflict between a child's legal and best interests, an attorney-[GAL] representing the child's best interests can also represent the child's legal interests." *In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2014). *See also Interest of M.V.*, 203 A.3d 1104, 1109 (Pa. Super. 2019) (stating that "in instances where the child's preferred outcome is not ascertainable, such as where the child is very young or is unable to express a preference, there can be no conflict between the child's legal and best interests").

Here, Attorney Hollenbeck declared Children incapable of expressing a preferred outcome due to their age, and that he could represent both their best and legal interests. *See* N.T., 1/24/22, at 7. The Orphans' Court agreed. *See id*. at 8. Thus, we discern no error. *See Interest of M.V.*, 203 A.3d at 1110. In this Court, Attorney Hollenbeck has filed a brief on behalf of Children advocating affirmance of the decrees terminating Father's parental rights.

a later hearing that each Child is bonded with his or her foster parents, Children's needs are met, and that she (Glover) would have significant concerns if Children were returned to Father's care. **See** N.T., 6/8/22, at 25-26. Glover also testified that Father had been evicted from housing in January 2022. **See** N.T., 6/8/22, at 12-14.

Although Father's counsel attended all three days of hearing, Father attended only the June 2022 hearing. He proffered no testimony or evidence in opposition to the termination petitions.

In separate Memoranda and Decrees filed August 2, 2022, the Orphans' Court terminated Father's parental rights to Children. Father filed timely notices of appeal to this Court. Approximately two weeks later, Father filed concise statements of errors complained of on appeal.[7] The Orphans' Court filed brief statements pursuant to Rule 1925(a) referring to the reasoning presented in its August 2, 2022 Memoranda and Decrees as the basis for its actions. Thereafter, this Court consolidated these cases *sua* sponte.

_____

[7] Father failed to comply with Pa.R.A.P. 1925(a)(2)(i) by failing to file a contemporaneous concise statement of errors with his notice of appeal. **Cf.** Pa.R.A.P. 905(a)(2), 1925(a)(2)(1). This oversight renders Father's notice of appeal defective, which can result in quashal in "extreme" situations. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009). Because CYS has not objected and we discern no prejudice in the delay in the filing of the statement, we decline to quash this appeal. **See id.** at 748.

Father has presented a single issue for consideration in his brief to this Court:

> Has the burden of proof been met by clear and convincing evidence to show that involuntary termination of parental rights of [Father] is warranted under 23 Pa.C.S.[A.] § 2511(a)(1), (2)[,] and (5)?

Father's Brief at 4.

Father's issue implicates the involuntarily termination of parental rights. We review involuntary termination orders for an abuse of discretion, which requires an error of law or a showing of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **See In re Adoption of L.A.K.**, 265 A.3d 580, 591 (Pa. 2021) (citation omitted). In applying this standard, an appellate court must accept the trial court's findings of fact and credibility determinations if supported by the record. **See Interest of S.K.L.R.**, 256 A.3d 1108, 1123 (Pa. 2021); **see also In re Adoption of C.M.**, 255 A.3d 343, 358 (Pa. 2021).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. **See** 23 Pa.C.S.A. §§ 2101-2938. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection 2511(a), the court must then consider whether termination would best serve the child under subsection (b). **See In re Z.P.**, 994 A.2d 1108, 1117 (Pa. Super. 2010).

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right "to make decisions concerning the

care, custody, and control" of his or her child with the "child's essential needs for a parent's care, protection, and support." ***See In re Adoption of C.M.***, 255 A.3d at 358. Termination of parental rights can have "significant and permanent consequences for both the parent and child." ***In re Adoption of L.A.K.***, 265 A.3d at 591. Pennsylvania law requires the moving party to establish the statutory grounds by clear and convincing evidence, evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***See Interest of M.E.***, 283 A.3d 820, 830 (Pa. Super. 2022). "[A] parent's basic constitutional right to the custody and rearing of [his] child is converted, upon the failure to fulfill [his] parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B.N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004).

Here, the Orphan's Court terminated Father's parental rights to A.M. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and his parental rights to X.S.-M. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). We need only agree with the trial court's decision as to any one of the grounds under subsection 2511(a), along with subsection (b), to affirm a decree terminating parental rights. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super.

2004) (*en banc*).  We review the evidence relating to section 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To prove the application of subsection (a)(2), the party petitioning for termination must establish: 1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot and will not

be remedied. ***See In re Adoption of A.H.***, 247 A.3d 439, 443 (Pa. Super. 2021). Subsection (a)(2) emphasizes the child's present and future needs, not the parent's refusal to perform their duties and thus "should not be read to compel courts to ignore a child's need for a stable home and strong continuous parental ties. . .. ***This is particularly so where the disruption of the family has already occurred and there is no reasonable prospect for reuniting it***." ***In re Z.P.***, 994 A.2d at 1117 (citation omitted) (emphasis in original). A court may grant involuntary termination of parental rights under 23 Pa.C.S.A. §2511(a)(2) when, a parent, *inter alia*, does not comply with court-ordered drug screens and remains non-cooperative with the childcare agency involved. ***See Interest of K.M.W.***, 238 A.3d 465, 475 (Pa. Super. 2020). ***See also Matter of Adoption of M.A.B.***, 166 A.3d 434, 443 (Pa. Super. 2017) (stating that a parent has a duty "to work towards unification by cooperating with the rehabilitative services necessary for [him] to be able to perform parental duties and responsibilities").

Father's brief fails to support his appellate claim with citations to either pertinent legal authorities or to the certified record, ***see*** Father's Brief at 10-13, as Pa.R.A.P. 2119 requires. When a litigant fails to provide this necessary support, we "will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or

find certain issues to be waived." *In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012) (citation omitted); *see also Commonwealth v. Hakala*, 900 A.2d 404, 406-07 (Pa. Super. 2006) (holding that setting forth the relevant standard of review governing an appellate issue, alone, is insufficient to comply with Rule 2119). Although we could find Father's claim waived on this basis, we will not do so because we can resolve the case on the existing record.

Father "denies that any repeated and continued incapacity, abuse, neglect or refusal has occurred," and asserts he was very attentive with Children. Father's Brief at 11-12. The Orphans' Court found that Father has a "long history of substance abuse and addiction" and a "substantial mental health history" which prevents him from caring for Children, and that Father's lack of meaningful progress toward reaching his goals demonstrates his inability to remedy the cause of his incapacity to properly parent going forward. *See* Memoranda and Decrees, 8/2/22, at 3, 17. The court also found that Father was unable to maintain stable housing. *See id*. at 12.

Clear and convincing evidence supports the Orphans' Court's finding that section 2511(a)(2) supports involuntary termination of Father's parental rights. CYS removed Children from Father's care due to his substance abuse and mental health issues as well as his erratic behavior. By repeatedly refusing to authorize the release of his medical records, or provide drug screening samples, Father prevented the court from learning the full extent of

his drug addiction and mental health problems as the record demonstrates. *See* N.T., 3/7/22, at 60 (Braeger's testimony that "[s]ince the inception of this case, [F]ather has not once, he hasn't [drug screened] for us, he hasn't been able to provide any releases for any services, to show that anything has changed since the very beginning of the case in which it was determined that he was a threat and a danger to be around [Children]"); N.T. 6/8/22, at 21-24, 31-32 (Glover's testimony that Father displayed a complete inability "to provide medical releases or drug screens, or to verify his participation in appropriate mental health and substance abuse services"); N.T., 1/24/22, at 158 (Southard's testimony that Father "has refused every single [drug] screen that I have asked."). Under the circumstances of this case, Father's failure to meet his duty to work toward unification by cooperating with the necessary rehabilitative services is itself sufficient evidence to prove the application of section 2511(a)(2). *See Interest of K.M.W.*, 238 A.3d at 475; *Matter of Adoption of M.A.B.*, 166 A.3d at 443. The information Father withheld about his drug use and mental health is critical here because the Orphan's Court previously found that Father presented a grave danger to Children (apart from having placed two machetes within the reach of then two-year-old A.M.) and terminated their visits until Father made substantial compliance with his goals. Father's failure even to attempt to show cooperation with meeting his goals provided the Orphan's Court with ample reason to believe Father had a

continuous inability to care for Children, left them without care and could not remedy his defects as a parent. **See Interest of K.M.W.**, 238 A.3d at 475; **Matter of Adoption of M.A.B.**, 166 A.3d at 443.

Additionally, Braeger and Glover testified Father was unable to obtain consistent housing and was evicted from at least one residence. **See** N.T., 3/7/22, at 61; N.T., 6/8/22, at 12-18, 30. Glover also testified succinctly with respect to Father's lack of follow-through on his parenting goals:

> The children are thriving in their current placement. Father to my knowledge has not done anything that was requested of him, as to the mental health evaluation and follow through, drug & alcohol evaluation and follow through, and providing the Agency with negative drug screens. Also, at the present time it's unclear [Father and Mother] have housing. So, they would not have safe, stable, and appropriate housing for the children. So, I would be very concerned if the children were to go back into [Father's] care without being able to verify that the circumstances that brought the children into placement weren't alleviated.

N.T., 6/8/22, at 26.

Based upon the foregoing evidence, the Orphans' Court properly concluded the existence of clear and convincing evidence that Father's mental health, substance abuse, and housing issues constituted an incapacity that caused him to be unable to provide essential parental care to Children and that he could not remedy those incapacities. **See** 23 Pa.C.S.A. § 2511(a)(2). Additionally, the disruption of the family had already occurred and there was no reasonable prospect for reuniting it. **See In re Z.P.**, 994 A.2d at 1117. As noted above, we need only find that one subpart of section 2511(a) has

been satisfied to justify termination. *See Interest of M.E.*, 283 A.3d at 830. Thus, Father's only claim for relief lacks merit.

Although an involuntary termination decision also requires a trial court to consider the best interests of the child under subsection 2511(b) as a separate analysis from whether there is ground for involuntary termination, *see In re Z.P.*, 994 A.2d at 1121, neither Father's statement of questions nor his argument section in Father's brief makes any mention of that section. This Court has found waiver under those circumstances. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 n.3 (Pa. Super. 2017).

Even were we to review the court's ruling on section 2511(b), we would not find merit to the assertion of error. Our review pursuant to section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re B.J.Z.*, 207 A.3d 914, 921-22 (Pa. Super. 2019); *see also* 23 Pa.C.S.A. § 2511(b). We must "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *See In re Adoption of A.H.*, 247 A.3d at 444-45. "Importantly, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship." *Id*. at 445. This inquiry also focuses upon various "[i]ntangibles such as love, comfort, security, and stability[.]" *Id*. at 444.

The Orphans' Court concluded that A.M. has a "limited and negative bond" with Father and that X.M.-S. has "no bond" with Father, and Children will benefit, rather than be hurt by, the termination of Father's parental rights. *See* Memoranda and Decrees, 8/2/22, at 12, 17.

The record provides clear and convincing evidence for the Orphans' Court's conclusions. Southard described Father's interactions and bond with Children as "very minimal." N.T., 1/24/22, at 153-55. Additionally, Glover testified that Children are happy, well-adjusted, and loved in their respective foster families. *See* N.T., 3/7/22, at 88-90. As she succinctly stated: "The children are thriving . . . . They're doing well. [They're] bonded with the foster parent[s]. [Their] needs are being met." *Id*. at 91. Father had no parental bond with Children, so even had Father asserted a claim based on Children's best interests, it would not merit relief.

Decrees affirmed.

Judge Pellegrini joins in this decision.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/19/2023